UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF KENTUCKY
AT LOUISVILLE

JAMES T. MARR, JR.                                                                      PLAINTIFF

v.                                                     CIVIL ACTION NO. 3:06-CV-20-S

COMMONWEALTH LAND TITLE                                      DEFENDANT
INSURANCE COMPANY

### MEMORANDUM OPINION

This matter is before the court upon the motion of the plaintiff, James T. Marr, Jr. ("Marr") for partial summary judgment (DN 42), and the motion of the defendant, Commonwealth Land Title Insurance Company ("Commonwealth") for summary judgment (DN 43). The issues presented in this action concern an owner's policy of title insurance issued by Commonwealth to Marr.

### BACKGROUND

Norman Culbertson ("Culbertson") was the owner of a home located at 1817 Knollwood Road, Louisville, Kentucky (the "Knollwood" property). Beginning in 1991, a number of creditors brought suit against Culbertson. In 1994, before any judgments had been entered against him, Culbertson entered into a transaction with Layne Smith ("Smith"), whereby Culbertson conveyed to him fee simple title to the Knollwood property. As part of the transaction, Smith then leased the property to Culbertson and granted him the right to repurchase it, exercisable at Culberton's option. Over the next two years, Culbertson's creditors obtained judgment liens against him.

Culbertson filed for bankruptcy protection in 1996 and received a discharge in April, 1997. In late 1997, Culbertson sought Marr's help in financing a business venture. To secure Marr's investment, Culbertson offered him collateral in the form of the Knollwood property. Believing Culbertson to be the owner of the property, Marr agreed to loan Culbertson the funds he needed and to take a collateral position on the property.

Before making the loan to Culbertson, Marr learned that Smith held title to the Knollwood property. Accordingly, the parties agreed that Marr would take an assignment of Culbertson's purchase option, exercise the option, and purchase the property from Smith. As part of the same transaction, Marr was then to convey an interest in the property to Culbertson on a contract for deed.

Marr engaged attorney Terrence McCoy ("McCoy") to act as counsel in closing the transaction with Culbertson and Smith.[1] On January 9,1998, McCoy closed two loans made by Marr to Culbertson totaling $260,000. In connection with this transaction, Marr paid Smith for the property and in return, Smith executed a deed in favor of Marr. Marr then gave Bedford Loan & Deposit Bank ("Bedford Bank") a mortgage on the Knollwood property to secure a $200,000 loan that Bedford Bank had made to Marr. As planned, Marr immediately reconveyed an interest in the property to Culbertson pursuant to a contract for deed. The contract for deed secured the loans from Marr to Culbertson. Through McCoy, Marr purchased a Commonwealth owner's policy of title insurance. McCoy also issued a loan policy of title insurance in favor of Bedford Bank on behalf of Commonwealth.

Culbertson eventually defaulted on his obligations to pay the loans made to him by Marr. On May 23, 2003, Marr filed a foreclosure action in Jefferson County Circuit Court (the "Circuit

---

[1] McCoy is Marr's counsel in this action as well.

Court"). In addition to suing Culbertson, Marr named Bedford Bank and Culbertson's judgment creditors as defendants in the foreclosure action. McCoy acted as Marr's counsel in that action. In the foreclosure proceedings, one of Culbertson's judgment creditors asserted that his judgment lien was prior and superior to Marr's interest in the Knollwood property. Based on this assertion, Marr, through McCoy, attempted to make a claim to Commonwealth under his owner's title insurance policy. A dispute exists as to when Commonwealth became aware that the claim made by McCoy was on behalf of Marr, and not on behalf of Bedford Bank.

The foreclosure action was referred to the Master Commissioner (the "Commissioner"), who held four separate hearings to determine the priority of the various parties to the proceeds of any judicial sale of the property. On October 7, 2004, the Commissioner issued a report (the "Commissioner's Report") in which he found that the 1994 sale of the Knollwood property from Culbertson to Smith was not, in fact, a sale, but a mortgage. This determination was based in part on the Commissioner's finding that Smith was a business partner of Culbertson's and had knowledge of his financial situation and legal troubles. Thus the Commissioner concluded that the conveyance was nothing more than a refinancing arrangement. The Commissioner also found that, because actual ownership remained vested with Culbertson, the judgment liens recorded by the judgment creditors validly attached to the Knollwood property.

The Commissioner then determined that Smith's 1998 conveyance of the Knollwood property to Marr was limited only to that part of the interest which he actually possessed. Because Smith only possessed a mortgage interest in the property, he could not convey legal title to Marr. Consequently, the Commissioner concluded that Marr was only entitled to a new mortgage on the property, one that was subject to the judicial liens filed by Culbertson's creditors. The

Commissioner then held that Marr was not entitled to priority under the bona fide purchaser doctrine as he:

> was apparently aware of Culbertson'[s] need to shield his property from creditors and understood that the previous conveyance to [Smith] was only a means of refinancing Culbertson's debt. . . It is well established doctrine that a Court may disregard sham legal contrivances. . . Even if [Marr's] knowledge of the facts was imperfect or incomplete, he was certainly aware that his "purchase" from [Smith] was not the arms length "sale" it purported to be. That alone is sufficient to place Marr on notice. . . that any interest he acquired in the property might be subject to other liens.

On December 7, 2004, after the Commissioner issued his report, McCoy notified Commonwealth on behalf of Marr that he had filed objections to the report with the Circuit Court. In a December 14, 2004 letter, Commonwealth informed McCoy that it had authorized him to defend Bedford Bank in the foreclosure proceedings. Commonwealth asserted that it was unaware that Marr had made a claim and, that based on the findings in the Commissioner's Report, it was not obligated to defend Marr. Nevertheless, Commonwealth paid the fees incurred by Marr in defense of his title to the Knollwood property up to that time.

In his motion objecting to the Commissioner's Report, Marr urged the Circuit Court to find that the conclusions in the report were not supported by facts on the record. Despite Marr's objections, on April 14, 2005, the Circuit Court confirmed and adopted the Commissioner's Report in full. Marr filed a motion with the Circuit Court to reconsider its decision. However, before the Circuit Court ruled on the motion, Marr settled with the judgment creditors by paying them a total of $80,000 for their liens. Commonwealth has refused to cover any loss sustained by Marr under Marr's owner's policy of title insurance.

Marr has now brought this action against Commonwealth asserting that Commonwealth: (1) breached the contract embodied in the owner's title insurance by not covering his losses; (2) breached its duty to defend him in the foreclosure action; and (3) acted in bad faith by denying his claim and refusing to defend him. Both parties have moved for summary judgment.

## DISCUSSION

A party moving for summary judgment has the burden of showing that there are no genuine issues of fact and that the movant is entitled to summary judgment as a matter of law. *Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 151-60, 90 S. Ct. 1598, 16 L. Ed. 2d 142 (1970); *Felix v. Young*, 536 F.2d 1126, 1134 (6th Cir. 1976). Not every factual dispute between the parties will prevent summary judgment. The disputed facts must be material. They must be facts which, under the substantive law governing the issue, might affect the outcome of the suit. *Anderson v. Liberty Lobby, Inc.*, 106 S. Ct. 2505, 2510 (1986). The dispute must also be genuine. The facts must be such that if they were proven at trial, a reasonable jury could return a verdict for the non-moving party. *Id.* at 2510. The disputed issue does not have to be resolved conclusively in favor of the non-moving party, but that party is required to present some significant probative evidence which makes it necessary to resolve the parties' differing versions of the dispute at trial. *First National Bank of Arizona v. Cities Service Co.*, 391 U.S. 253, 288-89 (1968). The evidence must be construed in a light most favorable to the party opposing the motion. *Bohn Aluminum & Brass Corp. v. Storm King Corp.*, 303 F.2d 425 (6th Cir. 1962).

Marr contends that Commonwealth breached its contract with him by not providing coverage under the terms of his owner's title insurance policy. He claims that Commonwealth is obligated to cover the loss he suffered as a result of the judgment creditors' claims of having superior interests

in the Knollwood property. He also contends that Commonwealth breached its duty to defend him in the foreclosure action. Commonwealth contends that Marr's loss is not covered under the terms of the policy and that it owed no duty to defend him.

Marr's owner's policy of title insurance provides, in pertinent part:

> The following matters are expressly excluded from the coverage of this policy and the Company will not pay loss or damage, costs, attorneys' fees, or expenses which arise by reason of:
>
> \*   \*   \*
>
> 3. Defects, liens, encumbrances, adverse claims or other matters (a) created, suffered, assumed, or agreed to by the insured claimant; (b) not known to the Company, nor recorded in the public records at Date of Policy, but known to the insured claimant and not disclosed in writing to the Company by the insured claimant prior to the date the insured claimant became an insured under this policy
>
> \*   \*   \*

Schedule B of the policy also excludes from coverage claims arising out of the contract for deed between Marr and Culbertson.

Commonwealth argues that because of the conclusion in the state court foreclosure action, that Culbertson, Smith, and Marr engaged in a "sham transaction," its duties to provide coverage and to defend were excluded under the terms of the policy. Commonwealth further argues that the doctrine of collateral estoppel precludes Marr from re-litigating this issue in the instant action. Marr argues that Schedule B is inapplicable and that he lacked the requisite state of mind to be excluded from coverage under paragraphs 3(a) and (b).

However, and importantly, Marr concedes that he would not be entitled to coverage under the terms of his policy and that Commonwealth would not be liable for breaching its duty to defend him if he is collaterally estopped from denying the findings in the Commissioner's Report. *See*

Plaintiff's Reply (DN 53) p. 3. Accordingly, the court must first consider whether the doctrine of collateral estoppel is applicable.

The full faith and credit statute, 28 U.S.C. § 1738,[2] requires a federal court to accord a state court judgment the same preclusive effect that the judgment would have in a state court. *In re Fordu*, 201 F.3d 693, 703 (6th Cir. 1999) (citing *Marrese v. American Academy of Orthopaedic Surgeons*, 470 U.S. 373, 384, 105 S.Ct. 1327, 84 L.Ed.2d 274 (1985)). When a federal court is asked to give preclusive effect to a state court judgment, the federal court must apply the law of the state in which the prior judgment was rendered to determine whether and to what extent the prior judgment should be given preclusive effect in a federal action. *Id.* (citing *Migra v. Warren City School Dist. Bd. of Educ.*, 465 U.S. 75, 81, 104 S.Ct. 892, 79 L.Ed.2d 56; *Bay Area Factors v. Calvert* (*In re Calvert*), 105 F.3d 315, 317 (6th Cir.1997); *Hospital Underwriting Group, Inc. v. Summit Health Ltd.*, 63 F.3d 486, 494-95 (6th Cir.1995)). Therefore, Kentucky law applies to determine the effect of the Circuit Court's confirmation and adoption of the Commissioner's Report in the foreclosure action.

The doctrine of collateral estoppel, also known as issue preclusion, "bars a party from re-litigating any issue actually litigated and finally decided in an earlier action." *Buis v.Elliott*, 142 S.W.3d 137, 140 (Ky. 2004) (citing *Yeoman v. Commonwealth Health Policy Bd.*, 983 S.W.2d 459, 464 (Ky. 1998)). Under Kentucky law, issue preclusion requires four elements: (1) the issue in the

---

[2]Section 1738 provides in pertinent part:

> The records and judicial proceedings of any court of any such State ... shall have the same full faith and credit in every court within the United States and its Territories and Possessions as they have by law or usage in the courts of such State ... from which they are taken.

28 U.S.C. § 1738.

second proceeding must be the same as the issue in the first; (2) the issue must have been actually litigated; (3) the issue must have been actually decided; and (4) the decision on the issue must have been a necessary component of the prior proceeding. *Yeoman*, 983 S.W.2d at 465.[3]

In the state court foreclosure action, the Commissioner concluded, and the Circuit Court agreed, that Marr's interest in the Knollwood property was subject to the liens of Culbertson's judgment creditors. In so concluding, the Commissioner and Circuit Court found that Culbertson, Smith, and Marr entered into a "sham transaction" and that Marr was not a bona fide purchaser of the property. Marr takes issue with the characterization of his purchase of the property from Smith and his subsequent conveyance to Culbertson on a contract for deed as a "sham transaction." Regardless of whether the transaction is properly characterized as a "sham," Marr cannot dispute that both the Commissioner and the Circuit Court concluded that Culbertson's judgment creditors were entitled to priority over Marr based on a finding that the parties entered into a transaction designed to shield Culbertson from his judgment creditors. Although Marr contends that these factual findings were unfounded, he concedes that if he is collaterally estopped from denying them, he would not be entitled to coverage and Commonwealth would not be liable for breaching its duty to defend. Thus, the issue in this proceeding is the same as the issue in the foreclosure proceeding and the first element of the *Yeoman* test is met.

In determining whether an issue was actually litigated, the party against whom issue preclusion is sought to be applied must have had a full and fair opportunity to litigate the issue. *Berrier v. Bizer*, 57 S.W.3d 271, 281 (Ky. 2001). Marr asserts that he was denied a full and fair

---

[3] Marr contends that Commonwealth is attempting to engage in offensive collateral estoppel. The court finds Commonwealth's attempted use of collateral estoppel to be defensive in nature. *See* 46 Am.Jur.2d *Judgments* § 491 (2007) ("the defensive use of collateral estoppel...occurs when a defendant seeks to prevent a plaintiff from asserting a claim the plaintiff has previously litigated and lost against another defendant").

opportunity to litigate the issue because he settled with the judgment creditors. We find this argument unpersuasive. In defining the elements of issue preclusion, the *Yeoman* court looked to the Restatement (Second) of Judgments § 27. 983 S.W.2d at 465. Under the Restatement, "[w]hen an issue is properly raised, by the pleadings or otherwise, and is submitted for determination, and is determined, the issue is actually litigated within the meaning of this Section." Restatement (Second) of Judgments § 27 cmt. d. The issue of whether Marr's participation in a transaction to shield Culbertson from his judgment creditors precluded him from being a bona fide purchaser of the Knollwood property was submitted for determination to the Circuit Court and was so determined. That Marr settled with the judgment creditors after the Circuit Court made this determination does not alter this conclusion. Moreover, Marr's settlement with the judgment creditors does not render the Circuit Court's determination of the issue an unnecessary component of the state foreclosure action. To the contrary, such determination was necessary to finding that Marr's interest in the Knollwood property was subject to the liens of Culbertson's judgment creditors. Accordingly, the second and fourth elements of the *Yeoman* test are met.

The third element of the *Yeoman* test is that the issue was actually decided. 983 S.W.2d at 465. This element requires a final decision or judgment on the merits. *See Jellinick v. Capitol Indem. Corp.*, 210 S.W.3d 168, 173 (Ky. App. 2006). The Restatement (Second) of Judgments provides that "final judgment" for purposes of issue preclusion includes "any prior adjudication of an issue in another action that is determined to be sufficiently firm to be accorded conclusive effect." Restatement (Second) of Judgments § 13. Although the Supreme Court of Kentucky has not expressly adopted this section of the Restatement, given its reliance on Section 27 in defining the elements of issue preclusion, we find that it would look to Section 13 to determine when an issue

has been actually decided. In the state court foreclosure action the Commissioner conducted multiple hearings to determine the priority of the parties. Additionally, the Commissioner issued, and the Circuit Court adopted and confirmed, an opinion containing detailed findings of fact. This adjudication is sufficiently firm to be accorded conclusive effect. *Cf. Kentucky League of Cities, Inc. v. General Reinsurance Corp.*, 174 F.Supp.2d 532, 539 (W.D.Ky. 2001) (refusing to apply collateral estoppel when the prior proceeding did not produce an opinion containing detailed findings of fact and conclusions of law). Moreover, that the Circuit Court never ruled upon Marr's motion to reconsider the confirmation and adoption of the Commissioner's report does not affect the finality of the Circuit Court's judgment. *See* Restatement (Second) Judgments § 13 cmt. f (merely because a party has filed a motion to make a judgment non-final does not effect its finality). Therefore, the third element of the *Yeoman* test is also satisfied.

In addition to arguing that he did not engage in a transaction designed to shield Culbertson from his judgment creditors, Marr asserts that such determination in the state court foreclosure action was not based on any evidence in the record. By making this argument, Marr essentially seeks to dispute that determination in this court. Because the elements of the *Yeoman* test are met, we find that under Kentucky law, Marr is precluded from making either argument. Consequently, he cannot establish that Commonwealth breached the contract in his owner's policy of title insurance by not covering his losses, nor can he establish that it breached its duty to defend him in the foreclosure action. Commonwealth is therefore entitled to summary judgment as to these claims.

Additionally, because Marr's claims are not covered under the policy, Commonwealth is entitled to summary judgment as to his claims for bad faith. Under Kentucky law, an insured must prove three elements in order to prevail against an insurance company for alleged refusal in bad faith

to pay the insured's claim: (1) the insurer must be obligated to pay the claims under the terms of the policy; (2) the insurer must lack a reasonable basis in law or fact for denying the claim; and (3) it must be shown that the insurer either knew there was no reasonable basis for denying the claim or acted with reckless disregard for whether such basis existed. *Motorists Mut. Ins. Co. v. Glass*, 996 S.W.2d 437, 452 (Ky. 1997) (citing *Wittmer v. Jones*, 864 S.W.2d 885, 890 (Ky. 1993)). Marr has failed to prove the first element.

For the reasons set forth above the court will grant Commonwealth's motion for summary judgment and deny Marr's motion for partial summary judgment. A separate order will be entered herein this date in accordance with this opinion.